**STATE of Missouri, Appellant,**

v.

**Richard A. ROGERS, Respondent.**

No. WD 53767.

Missouri Court of Appeals,
Western District.

June 16, 1998.

Susan L. Hogan, Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Spillane, Asst. Atty. Gen., Jefferson City, for Respondent.

HANNA, Presiding Judge.

The defendant, Richard Rogers, was convicted of felonious restraint (§ 565.120),[1] forcible rape (§ 566.030), forcible sodomy (§ 566.060), assault in the second degree (§ 565.060), assault in the first degree

1. All statutory references are to the Missouri Revised Statutes 1994, unless otherwise indicat-

(§ 565.050), first degree robbery (§ 569.020) and six counts of armed criminal action (§ 571.015). All of the sentences were run consecutively, for a total of 774 years. We affirm.

The defendant argues that there was insufficient evidence to support the robbery and armed criminal action convictions, and that the trial court erred in not granting a mistrial *sua sponte* because of the state's improper closing argument.

■ With respect to the sufficiency of the evidence, this court reviews all evidence as true that is favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence to the contrary. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993)(quoting *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989)).

To convict for first degree robbery, the state must prove that the defendant forcibly stole property and in the course thereof he threatened the immediate use of a dangerous instrument. § 569.020. Stealing is when a person appropriates property of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion. § 570.030. "Deprive" means "[t]o use or dispose of property in a manner that makes recovery of the property by the owner unlikely." § 570.010(7)(c).

The trial evidence showed that on February 4, 1996, the 16–year–old victim, Conise Hardin, was working the 4:00 P.M. to midnight shift at the McDonald's restaurant located on 47th Street and Swope Parkway, Kansas City. The defendant came to the restaurant twice and ordered food. He returned with Marshall Jackson, his cousin, and offered Conise a ride home. Derrick Hubbard, a McDonald's employee, overheard Conise tell the defendant to contact her over her pager to determine when to pick her up. When the defendant returned to the car, he told Jackson that he was going to come back to pick up a girl that worked there, take her to the park, and "do her."

ed.

Conise had met the defendant before as he had previously dated her cousin with whom she now lived. She had accepted rides from the defendant on previous occasions and had never before experienced any problems. As a result, when the defendant returned, Conise left with the defendant a few minutes after 12:00 A.M. The defendant told Conise that he had to go out south to pick up something. She asked that he take her home first but was told that he would not be long. She agreed to go with him.

The defendant drove to Swope Park, parked the car by some trees near a baseball field, got out of the car while it was running, and walked over to some trees. Conise moved over to the driver's side of the vehicle because she wanted to drive. The defendant returned to the passenger's side and began searching under the car seat. When Conise asked the defendant what he was doing, he reached up and began choking her. She fought back and was able to get him off her. At that point, the defendant pulled a knife and ordered her into the back seat. He told her to take off all of her clothes if she wanted to live. Conise did as she was ordered. He then cut her hand and ordered her to lay on her back. Although she tried to fight the defendant, and repeatedly asked him to stop, the defendant raped and sodomized her.

The defendant then began choking her, banging her head against the car door, and cutting her with the knife. The defendant grabbed her as she attempted to get out of the car. When Conise tried a second time to get out of the vehicle, the defendant pushed her out. She asked for her clothes, but the defendant locked the doors. She ran to the front of the vehicle, grabbed the defendant's jacket and ran through the snow toward some houses. The defendant pursued her in the vehicle. As Conise turned around, the defendant drove head-on into her. She got up and ran in the opposite direction. The

defendant followed and hit her from behind. She was dragged behind the car. Conise freed herself and continued toward the houses. The defendant tried to hit her again, but she hid. She went to a house for help. A resident of the house called the police and an ambulance. The police arrived, and found her lying on a porch wearing only a light-weight jacket and a single sock.

The morning after the attack, her clothes were identified and recovered by a motorist who took them to her grandmother's house. Also, on the day following the crime, a man later identified as the defendant, went to Discount City and sold a pager to Dylan Carter. Following the transaction, Carter discovered that the account on the pager was active and was registered to Conise Hardin. Conise told the police that her cousin's ex-boyfriend was the person who had attacked her. Carter identified the defendant from a photographic lineup as the person who sold him the pager. Conise also identified the defendant in a photographic lineup.

At trial, Conise testified to the events described above. Derrick Hubbard identified the defendant as the person who had picked Conise up from McDonald's after work on February 4, 1996. The defendant attempted to establish, through cross-examination of Conise, that consensual sex became violent when he was unable to procure drugs he promised her in exchange for sex. The jury returned verdicts of guilty of all counts and assessed punishment at 774 years.[2] The trial court imposed punishment in accordance with the jury's assessment and ordered the sentences to run consecutively. The punishment imposed for the robbery count was 30 years, and 50 years for armed criminal action.

The defendant's first point addresses whether there was sufficient evidence to convict for the robbery of Conise's pager. The defendant argues that "the state did not es-

2. A review of the injuries serves to explain the jury's assessment of punishment. Conise was admitted to the hospital in serious condition and remained for five days. She had wounds on the back of her head, her forehead, her cheek, her chin, her fingers and thumbs, her neck, her legs and feet. She suffered first and second degree burns to her legs from contact with the hot parts of the car. She also sustained tears around her rectum. At the time of her discharge from the hospital, physical therapy goals had not been met and she needed the assistance of two people to move her from a supine to sitting position. At the time of trial, she still had scars on her neck, arms, and legs. A former cross-country runner before this incident, she was unable to walk for a month and at the time of trial continued to have difficulty walking.

tablish that the defendant took the pager for the purpose of using or disposing of it in a way that made recovery by the owner unlikely or that [the defendant] used physical force against Conise Hardin for the purpose of preventing resistance to the taking of the property." The defendant describes the sale of the pager as an afterthought rather than something that he intended during the assault. There was, according to the defendant, no testimony that the defendant knew the pager was among Conise's clothes or that he knew she had a pager when he pushed her out of the car. Therefore, he argues that the state did not establish that he took the pager for any purpose, much less for the purpose of using it or disposing of it in a way that made it unlikely that Conise would recover it. Likewise, the defendant's argument continues, there was no evidence that he used physical force to obtain the pager, because he did not know that it existed. He admits that physical force was used in furtherance of the sexual assault, but not that he had "a conscious object at the moment" to take her property from her.

In *State v. Payne*, the defendant also argued that there was insufficient evidence to support the guilty verdict to robbery charges. 452 S.W.2d 805, 807 (Mo. banc 1970). Payne and his co-defendant robbed the victims by blocking the road and forcing them to stop their car. Payne pulled a shotgun out of his vehicle and took cash and a watch from the victims. The defendant claimed that there was no intent to permanently deprive the victims of their property. *Id.* The court held that the circumstances surrounding the taking of the victims' property was adequate to establish an intention to permanently deprive the owners of the property and, thus, all of the elements for first degree robbery had been presented by the state. *Id.*

■ There was evidence from which the jury could infer that the defendant knew Conise had a pager on her person. Before coming to pick her up, Conise told the defendant to contact her on her pager. Thus, the defendant had knowledge of her possession of a pager, which was located somewhere on her clothes. The defendant used force to take her clothes, which included the pager. He not only threatened her with a knife and forced her to disrobe, but also pushed her out of the automobile. When Conise asked for her belongings, the defendant locked the doors and refused to return them. He then ran her down. The jury may infer, among other things, that his actions were to prevent her from retrieving her property. Obviously, the defendant did not intend to keep her clothes because they were found in the street the next day. However, the pager was not with her clothes because the defendant had sold the pager. This was evidence that he intended to permanently deprive her of the property. Just because force was used to facilitate the sexual assault, does not preclude the fact finder from inferring that the force employed was also intended to deprive Conise of her property. There is sufficient evidence from which a jury could find that the defendant took Conise's pager, with the intent to make recovery of it unlikely, and that he used physical force in the process. Point denied.

■ The defendant also claims that the trial court erred in not, *sua sponte*, declaring a mistrial because the prosecutor made improper statements during closing arguments. Defense counsel did not object to these statements at trial, therefore, the matter is deemed waived and reviewable by this court only for "plain error" pursuant to Rule 30.20. Point denied. Rule 30.25(b).

Judgment is affirmed.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.